# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW JAMES GRIFFIN,<br><br>Plaintiff,<br><br>v.<br><br>FERNANDO GONZALES, et al.,<br><br>Defendants.<br>_____ / | 1:11-cv-00210-AWI-GSA-PC<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION PROCEED WITH THE AMENDED COMPLAINT AGAINST DEFENDANT C/O CALDWELL FOR RETALIATION, AND THAT ALL OTHER CLAIMS AND DEFENDANTS BE DISMISSED UNDER RULE 18 OR FOR FAILURE TO STATE A CLAIM<br>(Doc. 18.)<br><br>OBJECTIONS, IF ANY, DUE IN THIRTY DAYS |

## I. RELEVANT PROCEDURAL HISTORY

Matthew James Griffin ("Plaintiff") is a state prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"), proceeding pro se and in forma pauperis with this civil rights action pursuant to 42 U.S.C. § 1983. This action was initiated by civil Complaint filed by Plaintiff on January 28, 2011, in the Sacramento Division of the United States District Court for the Eastern District of California. (Doc. 1.) On February 7, 2011, the case was transferred to the Fresno Division of the Eastern District of California. (Doc. 4.)

On January 10, 2012, the Court dismissed the Complaint for failure to state a claim, with leave to amend. (Doc. 14.) On February 17, 2012, Plaintiff filed an Amended Complaint, which is now before the Court for screening. (Doc. 18.)

## II. SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Iqbal 129 S.Ct. at 1949. The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

## III. SUMMARY OF AMENDED COMPLAINT

Plaintiff is presently incarcerated at Corcoran State Prison ("CSP") in Corcoran, California. The events at issue occurred at California Correctional Institution ("CCI") in Tehachapi, California, when Plaintiff was incarcerated there, and CSP. Plaintiff names thirty defendants and Doe Defendants #1-8.

Plaintiff alleges as follows in the Amended Complaint. Plaintiff has been diagnosed with "inoperable strabismus with significant alternating exotropia," which is a visual impairment causing intermittent double vision, monocularity, eye fatigue, reduced visual field, involuntary nystagmus, vertigo, and loss of depth perception. (Amd Cmp, Doc. 18 at ¶10.) Plaintiff claims he is a qualified

individual with a disability within the meaning of the Americans With Disabilities Act ("ADA) and Rehabilitation Act of 1973 ("RA").

Plaintiff was transferred from New Mexico state custody to the custody of the CDCR on August 10, 2008. Prior to accepting custody of Plaintiff, defendants CDCR and the California Prison Health Care Services Receivership ("CPHCSR") knew of Plaintiff's medical conditions including visual impairment, back pain, joint pain, sciatica, and a prostate condition. Plaintiff alleges that the CDCR and CPHCSR accepted Plaintiff knowing they would be unable to meet Plaintiff's medical needs.

### *CALIFORNIA CORRECTIONAL INSTITUTION – 8/10/08 to 7/29/09*

Plaintiff was housed at CCI from August 10, 2008 until July 29, 2009.

#### *Housing in Management Cell*

From August 10, 2008 to August 27, 2008, Plaintiff was placed in a management cell by defendants Does #1-5 (Tactical Team), Lieutenant R. Miller, and C/O J. Avila, with only a four-foot long piece of unsanitary foam strip to sleep on, with blood-splattered walls and floor, a dirty sink and toilet, and insects crawling over his eating and sleeping area, and without a chair, desk, or cleaning supplies. Defendants Does #1-5 (Tactical Team), Lieutenant R. Miller, C/O J. Avila, Fernando Gonzales (Warden), Captain J. Hill, C/O L.C. Davis, C/O Howell, C/O Olmos, and CC-I Ruiz each personally visited Plaintiff at the management cell, witnessed Plaintiff's conditions of confinement, and failed to take corrective action to remedy the conditions. Plaintiff alleges that he developed a painful, debilitating rash over his entire body and extremities which required medical treatment, and that his preexisting back pain, joint pain, and sciatica were aggravated, requiring Plaintiff to see a doctor.

#### *Plaintiff's Medications*

Plaintiff alleges that before he was transferred from New Mexico to California, doctors diagnosed him with sciatica and were treating his low back pain and joint pain with prescription medications. Plaintiff was also diagnosed with an enlarged prostate for which he was prescribed medication. From August 10, 2008 to July 27, 2009, defendants Dr. M. Ross, J. Walker, LVN Kim Hutto, Dr. Campbell, L. Ledford, Dr. A. Joaquin, Dr. Carver, LVN V. Landrus, Dr. M. Vu, and Does

3

#6-8 repeatedly allowed Plaintiff's prostate medications to lapse without warning, changed his pain medication from Tylenol 3 to Gabapentin, and allowed the pain medication to lapse. The abrupt discontinuation of his prostate medication caused uncontrolled intermittent urination. The discontinuation of pain medication left Plaintiff with debilitating pain in his joints, lower back, and sciatic nerve. Plaintiff also became depressed with suicidal thoughts. Defendants Dr. M. Ross, J. Walker, LVN Kim Hutto, Dr. Campbell, L. Ledford, Dr. A. Joaquin, and Doe #8 also denied Plaintiff's requests for showers to wash after urinating on himself.

### *Plaintiff's Accommodation Chrono*

On November 13, 2008, because of his visual impairment, Plaintiff was issued a Comprehensive Accommodation Chrono, limiting his accommodations to the ground floor and bottom bunk, with no heights greater than four feet. On January 16, 2009 and March 12, 2009, Plaintiff wrote to CDCR officials requesting privilege group and work group assignments for the partially disabled. On April 2, 2009, Plaintiff was assigned a staff assistant for having a serious vision problem. On May 3, 2009, Plaintiff filed an ADA appeal which was screened out for failing to attach documents.

### *Plaintiff's Appeal*

On March 26, 2009, Plaintiff handed defendant C/O Caldwell a completed 602 prison appeal requesting more frequent showers, and C/O Caldwell studied the appeal as if reading it, tore up the appeal, and walked away with the nurse.

### ***CORCORAN STATE PRISON – 7/29/09 to Present***

On July 28, 2009, Plaintiff was transferred from CCI to CSP.

### *Plaintiff's Requests for Disability Accommodations*

During August 2009, Plaintiff slipped and fell while being escorted from the upstairs shower to the ground floor cell by staff. Medical staff then instructed Security that Plaintiff's Accommodation Chrono also meant no walking on stairs.

On January 11, 2010, defendant Dr. Neubarth cancelled Plaintiff's Chrono, stating that the ADA only covers blindness and Plaintiff's vision impairment does not meet the 20/200 threshold

///

required by the CDCR. On January 12, 2010, defendant Dr. Edgar Clark approved Dr. Neubarth's decision in writing. All of Plaintiff's vision related accommodations were cancelled.

Plaintiff filed an ADA appeal requesting accommodations through the Disability Placement Program-Vision ("DPPV"). On February 9, 2010, the appeal was denied by defendant Nurse Dhah, on the ground that Plaintiff's vision deficit did not meet the 20/200 standard. On February 18, 2010, defendant Dr. Edgar Clark approved Nurse Dhah's decision to deny the appeal.

On February 26, 2010, Plaintiff was seen by defendant Dr. Sofinski who recommended the renewal of Plaintiff's Chrono with the following accommodations: permanent ground floor, permanent bottom bunk, no driving, no heights greater than four feet, no operating hazardous machinery, no kitchen work, and no work with hot or sharp items. Dr. Sofinski acknowledged that the CDCR was enforcing the 20/200 standard for enrollment in the DPPV, and he could not instruct the yard doctor to complete an ADA Form 1845 for DPPV placement because of the CDCR's rules, not the ADA's rules.

On March 15, 2010, Plaintiff was examined by defendant Dr. Karan, who issued Plaintiff a Chrono which included the accommodations recommended by Dr. Sofinski. Dr. Karan refused to complete an ADA Form 1845 for Plaintiff for DPPV, or to provide Plaintiff with a cell with handrails or a day-glo visual disability vest. Without an ADA Form 1845 in his file, Plaintiff is ineligible for enrollment in a work group or privilege group for the partially disabled, or enrollment in the DPPV which provides accommodations to the visually impaired including, but not limited to, cells with handrails, showers with handrails, day-glo vests, work assignments appropriate to type and level of impairment, cells with 24-hour lighting, and assistive reading devices.

Defendants Dr. J. Neubarth, Dr. J. Moon, Nurse M. Dhah, Teresa Macias, Dr. Edgar Clark, Dr. J. Wang, D. Foston, Dr. L. Karan, Dr. S. Sofinski, CDCR, and CPHCSR all excluded Plaintiff from participation in the DPPV, from benefits such as a cell and shower with handrails, a day-glo visual disability vest, work assignments appropriate to the type and level of Plaintiff's visual impairment, enrollment in a privilege group and work group for the partially disabled, a cell with 24-hour bright light, and appropriate placement for the visually impaired.

///

### *Dr. Moon*

On May 20, 2010, Plaintiff was seen by defendant Dr. Moon for a follow up on a skin condition and Plaintiff's request for ADA placement in the DPPV. Dr. Moon became enraged about the number of complaints Plaintiff had made about medical care and then announced that he was canceling Plaintiff's pain medication, which had no connection to what Plaintiff was being seen for.

On January 12, 2012, Dr. Moon cancelled and denied renewal of Plaintiff's Accommodation Chrono, stating, "You are not blind, I don't understand this." (Id. at ¶42.) Plaintiff filed an ADA appeal challenging Dr. Moon's actions, but the appeal was screened out for being the same issue as a prior appeal, even though the prior appeal was partially granted at the Second Level.

### Request for Relief

Plaintiff requests monetary damages, injunctive and declaratory relief, and costs and fees.

## IV. PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "Section 1983 . . . creates a cause of action for violations of the federal Constitution and laws." Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations omitted). "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." Id.

### A. Rule 18 – Unrelated Claims

Plaintiff alleges multiple claims in the Amended Complaint that are largely unrelated. Plaintiff may not proceed in one action on a myriad of unrelated claims against different staff members. "The controlling principle appears in Fed. R. Civ. P. 18(a): 'A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party.' Thus multiple claims against a single party are fine, but Claim A against

Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

In this instance, Plaintiff's Amended Complaint recites at least three distinctly different events against different defendants, in violation of Rule 18(a): (1) lapses and discontinuation of Plaintiff's medications, (2) Plaintiff's housing in the management cell, and (3) denial of Plaintiff's requests for disability accommodations. Plaintiff may not proceed on unrelated claims in one action.

**B.     Unexhausted Claims**

Plaintiff alleges in the Amended Complaint that on January 12, 2012, Dr. Moon cancelled and denied renewal of Plaintiff's Accommodation Chrono, stating, "You are not blind, I don't understand this." (Id. at ¶42.) Plaintiff may not include claims that have not been administratively exhausted.[1] Because this event occurred after the date the Complaint was filed on January 28, 2011, it could not have been administratively exhausted before the Complaint was filed. Therefore, any claim arising after January 28, 2011, including any claim against Dr. Moon arising on January 12, 2012, must be dismissed from this action.

**C.     ADA and RA Claims**

Plaintiff claims that Defendants violated his rights under the ADA and RA by refusing to provide him with reasonable accommodations.

"Title II of the ADA and § 504 of the RA both prohibit discrimination on the basis of disability." Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity,

---

[1] Section 1997e(a) of the Prison Litigation Reform Act of 1995 provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

7

or be subject to discrimination by such entity." 42 U.S.C. § 12132. Section 504 of the RA provides that "no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U. S. C. § 794. Title II of the ADA and the RA apply to inmates within state prisons. Pennsylvania Dept. of Corrections v. Yeskey, 118 S.Ct. 1952, 1955 (1998); see also Armstrong v. Wilson, 124 F.3d 1019, 1023 (9th Cir. 1997); Duffy v. Riveland, 98 F.3d 447, 453-56 (9th Cir. 1996).

"To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a qualified individual with a disability; (2) [he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [his] disability." Lovell, 303 F.3d at 1052. "To establish a violation of § 504 of the RA, a plaintiff must show that (1) [he] is handicapped within the meaning of the RA; (2) [he] is otherwise qualified for the benefit or services sought; (3) [he] was denied the benefit or services solely by reason of [his] handicap; and (4) the program providing the benefit or services receives federal financial assistance." Id.

"'Title II of the ADA prohibits discrimination in programs of a public entity or discrimination by any such entity.'" Roundtree v. Adams, No. 1:01-CV-06502 OWW LJO, 2005 WL 3284405, at *8 (E.D.Cal. Dec. 1, 2005) (quoting Thomas v. Nakatani, 128 F.Supp.2d 684, 691 (D. Haw. 2000)). "The ADA defines 'public entity' in relevant part as 'any State or local government' or 'any department, agency, special purpose district, or other instrumentality of a State or States or local government.'" Roundtree, 2005 WL 3284405, at *8 (citing 42 U.S.C. § 12131(1)(A)-(B)). Public entity, "'as it is defined within the statute, does not include individuals.'" Id. (quoting Alsbrook v. City of Maumelle, 184 F.3d 999, 1005 n.8 (8th Cir. 1999)).

Individual liability is precluded under Title II of the ADA. Thus, any claim Plaintiff might intend to make under the ADA against individual Defendants is not cognizable. Moreover, in order to state a claim under the ADA and the RA, Plaintiff must have been "improperly excluded from participation in, and denied the benefits of, a prison service, program, or activity on the basis of his physical handicap." Armstrong, 124 F.3d at 1023. Plaintiff alleges that he was excluded from

participation in a work group or privilege group for the partially disabled, and enrollment in the DPPV which provides accommodations to the visually impaired, because he is not blind and his vision deficit did not meet the 20/200 standard required by the CDCR for such participation. However, Plaintiff has not alleged exclusion from participation, or denial of benefits, *because* he has a physical handicap. Thus, Plaintiff fails to state a claim under the ADA and the RA.

### D.  Conditions of Confinement Claim – Eighth Amendment

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995 (1992) (citations and quotations omitted). In order to state a claim for violation of the Eighth Amendment, the plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm to the plaintiff. E.g., Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994); Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2006). "[R]outine discomfort inherent in the prison setting" does not rise to the level of a constitutional violation. Id. at 731.

While Plaintiff has alleged that he spent seventeen uncomfortable days in an unsanitary management cell, Plaintiff has not described extreme deprivations that rise to the level of a constitutional violation. Moreover, Plaintiff has not alleged facts demonstrating that any of the defendants knew they were subjecting Plaintiff to a substantial risk of serious harm and consciously disregarded that risk. Therefore, Plaintiff fails to state a claim for adverse conditions of confinement in violation of the Eighth Amendment.

### E.  Retaliation - First Amendment

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because

of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

Plaintiff alleges that on March 26, 2009, he handed defendant C/O Caldwell a completed 602 prison appeal requesting more frequent showers, and C/O Caldwell studied the appeal as if reading it, tore up the appeal, and walked away with the nurse.

Plaintiff also alleges that on May 20, 2010, he was seen by defendant Dr. Moon for a follow up on a skin condition and Plaintiff's request for ADA placement in the DPPV. Dr. Moon became enraged about the number of complaints Plaintiff had made about medical care and then announced that he was canceling Plaintiff's pain medication, which had no connection to what Plaintiff was being seen for.

Under liberal pleading standards, these allegations state cognizable claims for retaliation against defendants C/O Caldwell and Dr. Moon. However, as discussed above, these two retaliation claims are unrelated under Rule 18 of the Federal Rules of Civil Procedure, and Plaintiff may not bring both claims in the same action.

### F. Medical Claim – Eighth Amendment

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 295 (1976)). The two part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)). Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060). In order to state a claim for violation of the Eighth Amendment, Plaintiff must allege sufficient facts to support a claim that the named

defendants "[knew] of and disregard[ed] an excessive risk to [Plaintiff's] health . . . ." Farmer, 511 U.S. at 837, 114 S.Ct. at 1979.

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980), citing Estelle, 429 U.S. at 105-06. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995); McGuckin, 974 F.2d at 1050, overruled on other grounds, WMX Techs, Inc., 104 F.3d at 1136. Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).

"A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted). To prevail, plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (internal citations omitted).

Plaintiff alleges that prison officials at CCI repeatedly allowed Plaintiff's prostate medications to lapse without warning, changed his pain medication from Tylenol 3 to Gabapentin, and allowed the pain medication to lapse. The abrupt discontinuation of his prostate medication caused uncontrolled intermittent urination, and Plaintiff was denied sufficient showers to wash himself. The discontinuation of pain medication left Plaintiff with debilitating pain in his joints, lower back, and sciatic nerve. Plaintiff also became depressed with suicidal thoughts.

Plaintiff has established that he had serious medical needs: a prostate condition requiring medical treatment, and debilitating pain in his joints, lower back, and sciatic nerve. However, Plaintiff fails to allege facts demonstrating that any of the defendants were deliberately indifferent

11

to his serious medical needs.  Plaintiff has not shown that any named defendant knew that he had a serious medical need and purposely acted with indifference or indifferently failed to respond to that need, with harm caused by the indifference.  At the most, Plaintiff alleges a difference of opinion about medical treatment between prison medical authorities and a prisoner-patient, which does not give rise to a § 1983 claim.  Therefore, Plaintiff fails to state a cognizable claim for denial of medical care against any of the defendants.

### G.     Appeals Process

Plaintiff alleges that Defendants improperly responded to his prison appeals.  Plaintiff is advised that Defendants' actions in responding to Plaintiff's appeals, alone, cannot give rise to any claims for relief under section 1983 for violation of due process.  "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates."  Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (citing Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).  "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment."  Azeez, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986).  Actions in reviewing a prisoner's administrative appeal cannot serve as the basis for liability under a section 1983 action.  Buckley, 997 F.2d at 495.  Thus, since he has neither a liberty interest, nor a substantive right in inmate appeals, Plaintiff fails to state a cognizable claim for the processing and/or reviewing of his inmate appeals.

### H.     Declaratory and Injunctive Relief and Attorney Fees

Plaintiff requests as relief monetary damages, declaratory and injunctive relief, and fees and costs.  With regard to declaratory relief, "[a] declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest."  Eccles v. Peoples Bank of Lakewood Village, 333 U.S. 426, 431 (1948).  "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in

issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." United States v. Washington, 759 F.2d 1353, 1357 (9th Cir. 1985). In the event that this action reaches trial and the jury returns a verdict in favor of Plaintiff, that verdict will be a finding that Plaintiff's constitutional rights were violated. A declaration that defendant violated Plaintiff's rights is unnecessary.

Plaintiff requests injunctive relief via a court order requiring defendants to comply with the ADA. The court cannot award this form of relief. Any award of equitable relief is governed by the Prison Litigation Reform Act, which provides in relevant part:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.

18 U.S.C. §3626(a)(1)(A). The injunction requested by Plaintiff would not remedy the past violation of Plaintiff's constitutional rights and therefore is not narrowly drawn to correct the alleged past violations. Moreover, because Plaintiff fails to state a claim for violation of the ADA, such relief is not available.

Plaintiff also requests costs and fees. With regard to attorney fees, "In any action or proceeding to enforce a provision of section[] 1983 . . . , the court, in its discretion, may allow the prevailing party . . . reasonable attorney's fees . . . ." 42 U.S.C. § 1988(b). However, Plaintiff's contention that he is entitled to attorney's fees if he prevails is without merit. Plaintiff is representing himself in this action. Because Plaintiff is not represented by an attorney, he is not entitled to recover attorney's fees if he prevails. Gonzales v. Kangas, 814 F.2d 1411, 1412 (9th Cir. 1987).

For the foregoing reasons, the Court finds that this action is a damages action only.

## V.    CONCLUSION AND RECOMMENDATIONS

The Court finds that Plaintiff states cognizable claims for retaliation under the First Amendment against defendants C/O Caldwell and Dr. Moon. However, Plaintiff fails to state a claim against any other defendant upon which relief may be granted under section 1983, the ADA,

or the RA. The Court also finds that Plaintiff's claim for retaliation against Dr. Moon is an unrelated claim under Rule 18 and shall recommend the claim be dismissed without prejudice to filing a new civil rights case.

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend 'shall be freely given when justice so requires.'" In this action, the Court previously granted Plaintiff leave to amend the complaint, with ample guidance by the Court. Plaintiff has now filed two complaints without stating a cognizable claim against any of the defendants except defendants C/O Caldwell and Dr. Moon for retaliation. The Court finds that the deficiencies outlined above are not capable of being cured by amendment, and therefore further leave to amend should not be granted. 28 U.S.C. § 1915(e)(2)(B)(ii); Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

Therefore, **IT IS HEREBY RECOMMENDED** that:

1. This action proceed with the Amended Complaint, filed on February 17, 2012, against defendant C/O Caldwell for retaliation in violation of the First Amendment, for money damages only;

2. Plaintiff's retaliation claim against defendant Dr. Moon be dismissed from this action as an unrelated claim under Rule 18, without prejudice to filing a new civil rights case;

3. All other claims and defendants be dismissed from this action, for failure to state a claim upon which relief may be granted, without leave to amend;

4. Plaintiff's claims for adverse conditions of confinement, inadequate medical care, interference with the appeals process, claims under the ADA and RA, claims for declaratory and injunctive relief, and claims arising after January 28, 2011 be dismissed for failure to state a claim upon which relief may be granted;

5. All defendants except Defendant C/O Caldwell be dismissed from this action, based on Plaintiff's failure to state any claims against them upon which relief may be granted; and

6. This action be referred back to the Magistrate Judge for further proceedings, including initiation of service of process.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **thirty days** after being served with these findings and recommendations, Plaintiff may file written objections with the Court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **June 27, 2012**                    /s/ **Gary S. Austin**
                                             UNITED STATES MAGISTRATE JUDGE